# ST. LOUIS, ALTON & TERRE HAUTE RAILROAD CO.

## V.

## FLANNAGAN & ILLINSKI.

*Common Carriers—Transportation of Bees—Enforcement of Lien for Freight—Negligence—Damages.*

1. Where a common carrier undertakes to transport property without requiring the prepayment of freight, it is bound to use the same care in transporting, storing and holding such property as it would be its duty to do had the freight been prepaid.

2. In the case presented, it is *held:* That the defendant, having elected to detain the plaintiffs' bees to enforce its lien for freight, was bound to take all reasonable measures to prevent injury to them while so detained; that its failure to unload the bees within a reasonable time was negligence; and that it is liable for the damages thereby caused.

[Opinion filed June 7, 1887.]

APPEAL from the Circuit Court of St. Clair County; the Hon. AMOS WATTS, Judge, presiding.

It appears from the record that the road of appellant in connection with the Illinois Central Railroad forms a continuous line for through business from East St. Louis to New Orleans, running through Kenner, a station upon the latter road about ten miles from the latter city. In September, 1883, the appellees desired to ship two car loads, comprising some 400 colonies of honey bees, to Kenner, Louisiana, from St. Clair County, Illinois, and Flannagan applied to Mr. Blue, the general freight agent at St. Louis, for the cars and rates of freight. He was told that the rates to New Orleans would be $100 per car, and to see Mr. Lary, freight agent at East St. Louis, about the shipment and the furnishing of cars. He afterward saw Lary and had the cars placed and loaded and told him that they were to go to Kenner and they were so billed.

Flannagan testifies that he told Lary that he would prepay the freight at East St. Louis, and within one-half hour after the bees were shipped he went to the freight office for that purpose and did not find the agent, and on the next day, which was Sunday, went to his boarding house to see him and met him coming from church, and then offered to give him a check for the freight, but was told it made no difference, he could hand it to him at any time. Lary, as a witness, denies these statements, and insists that nothing was said about the bees being shipped to Kenner or the prepayment of freight. Snyder, an agent of the appellees, and who from the evidence would seem to be an experienced apiarist, was put in charge of the bees to care for them while in the transit and to receive them at their place of destination. When the cars going south arrived at Kenner, Snyder demanded the bees of the agent at that point, but was refused, and they went through to New Orleans, where a like demand was made by him and he was again refused, as their destination, according to the way-bills, was Kenner. On the same day the cars were returned over the same route to Kenner, where he again demanded them, but was refused this time on the ground that the freight was not paid. He then notified the agent at that point that if the bees were not unloaded they would die from the confinement,

and while insisting that the freight had been prepaid by appellees at East St. Louis, requested the agent to unload them and put them in charge of some person as the agent of the carrier so as to prevent injury to them, if the railroad company would not deliver them to him on behalf of the appellees. The railroad agent refused to do this, but placed the two cars on a side track and kept them there for two days in the hot sun, the effect being that the combs melted down, and many colonies of the bees died, and the others were injured. After the two days the bees were unloaded and put in charge of one Stahl, hired by the railroad company, who removed them to Kenner Grove, a place in possession of appellees.

The defendant claimed that it had a lien upon the bees for $235, the amount of the freight from place of shipment to Kenner by way of New Orleans, and for that reason refused to deliver the same as it lawfully might until the sum was paid. The appellees brought this action to recover damages for the injury to the bees while detained and recovered $500 in the court below, and the defendant appealed.

Messrs. HALBERT & ROPIEQUET, for appellant.

Mr. CHARLES W. THOMAS, for appellees.

PILLSBURY, J. The testimony tended to show that the appellant undertook to transport the bees from the place of shipment to Kenner for $100 per car, and that it was understood that the freight would be prepaid at East St. Louis. It likewise tended to prove that Flannagan, one of the appellees, immediately after the shipment went to the freight office to pay the freight, but not finding the agent he, on the next day, proposed to give the agent a check for it, but being Sunday, the agent told him it made no difference, he could hand it in any time.

The testimony, however, upon this point was quite conflicting, and in the view we take of the case it is not necessary to determine where the preponderance lies.

It is very clear that the appellant was to carry the bees to

Kenner, for so it billed them, and refused to deliver them at New Orleans when demanded by Snyder, and it is not very material whether the freight from that city back to Kenner was to be added to the through rates or not.

The proof is clear that when the bees arrived at Kenner they were in good condition, and while standing upon the side track in the hot sun they were injured to as great an extent as has been found by the jury. The railroad agent was notified by Snyder that they would die unless unloaded and cared for, and Stahl, the person in whose charge they were afterward placed by the railroad company, testifies that he also so informed the railroad agent. The only excuse given by the station agent for not unloading them and properly caring for them, is that the civil authorities of Kenner would not allow them to be unloaded. This excuse is not sufficiently proven even if good, for it does not appear what action of the authorities had been taken in that regard nor that they had the power to prevent the railroad from discharging its freight; besides it is shown that the railroad did unload them while still retaining them for its freight, and it is but a fair conclusion that it could have sooner done so if it had made proper efforts in that direction. It was optional with the appellant to refuse to carry the bees unless its charges for transportation were first paid, or to receive and carry them relying upon its lien as a common carrier, and taking the latter course it was bound to use the same care in transporting, storing and holding them for the appellees that the law would impose upon it if the freight had been paid in advance.

It was its duty when the bees arrived at their destination, if it elected to detain them until its charges were paid, to take all reasonable measures to prevent injury to them while so detained. Where a common carrier accepted live hogs for shipment and failed to water and care for them during transit, it was held in Ill. Cent. R. R. v. Adams, 42 Ill. 474, that the carrier was guilty of gross negligence which made it liable for any damages to the stock occasioned thereby. This decision was re-affirmed in T., W. & W. Ry. v. Hamilton, 76 Ill. 393, where it is further held to be also gross negligence upon the

St. L., A. & T. H R. R. Co. v. Flannagan & Illinski.

part of a carrier not to unload such live stock within a reasonable time after arrival at its destination.

The principle of these cases are conclusive of the one under consideration. The property here was of that character that confinement in the cars, standing in the hot sun upon a side track, would almost certainly result in great injury to it, and the station agent was fully notified of the fact, and while we concede that appellant had the right to detain the property until its charges were paid, if it had not waived its lien, yet it was a violation of its duty not to use all reasonable precautions to prevent unnecessary injury to it while enforcing its lien upon it. It is clear from the testimony submitted that by the exercise of even ordinary care and prudence, the bees could have been unloaded within a reasonable time after their arrival at Kenner and the injury thereby prevented. Nothing appears in the record from which it can fairly be inferred that the carrier could not, at once, when it had determined to retain the property, have unloaded it and placed it in the possession of some suitable person, and thus retain it in its possession, as it did do after the injury was done. This failure upon its part was such negligence as made it liable to appellees for all the damages sustained by them in consequence thereof.

In the view above taken of the case, it is not necessary to discuss the question whether the lien of appellant extended to the through rate of $200 only, or also included the $35 from New Orleans back to Kenner, as the evidence is clear that the property was held for the two days during which time the damages accrued for the non-payment of the freight agreed to be paid as well as for that portion in dispute.

This disposes of the objection to the third instruction given for appellees.

The action of the court in modifying defendant's second instruction and in refusing others asked is not insisted upon here as being so erroneous as to require a reversal of the judgment.

Finding no error in the record prejudical to appellant, the judgment will be affirmed.

*Affirmed.*